BEST, Respondent, vs. GUNTHER, imp., Appellant.

*May 4—October 3, 1905.*

*Powers of attorney: Revocation: Recording: Statutes: Mortgages.*

1. At common law the revocation of the authority conferred by a power of attorney, to be effectual, must be brought to the personal notice of the agent.

2. A power of attorney to convey or mortgage real estate is not included within the term "conveyance" as defined by sec. 2242, Stats. 1898, and is therefore not affected by the terms used in ch. 100, Stats. 1898, declaring the effect of recording *conveyances* of real estate, and which were enacted for the purpose of protecting subsequent purchasers in good faith, for a valuable consideration.

3. A power of attorney to convey or mortgage real estate not being within the statutory provisions declaring the effect of recording conveyances of real estate, the fact that after such a power was recorded a revocation thereof was also recorded, is *held* not to terminate the power in the absence of actual notice to the agent, and a mortgage, executed after such revocation by virtue of such power, is valid and effectual to bind the principal's land.

4. Such power is not affected by the provisions of secs. 2237, 2246, Stats. 1898 (declaring that an instrument containing a power to convey land may be recorded, and, when so recorded, shall not be deemed revoked by any act of the party who executed it unless the instrument of revocation be also recorded in the same office), since such sections contain nothing to the effect that such recording is necessary to give validity, and it is not

prescribed that the recording of the instrument of revocation shall take the place of actual notice to the agent.

5. Under secs. 2237, 2246, Stats. 1898, a common-law revocation of a recorded power of attorney is ineffectual unless the instrument of revocation is also recorded in the same office.

CASSODAY, C. J., dissents.

APPEAL from a judgment of the circuit court for Waukesha county: JAMES J. DICK, Circuit Judge. *Affirmed.*

Action to foreclose a mortgage upon real estate. It appears that the defendants, Arthur W. Gunther and *Mary T. Gunther,* are husband and wife, and that at the time in question *Mary T. Gunther* owned the real estate involved in this litigation. There is no dispute but that on November 21, 1898, she executed a general power of attorney to sell, to convey, and to mortgage her real estate, in favor of her husband, Arthur W. Gunther, giving and granting to him as full power and authority to do everything necessary for such purposes as she could exercise if she acted personally in the matter. This power was executed in the form to entitle it to record, and on December 1, 1898, it was recorded in the office of the register of deeds for Waukesha county, where the real estate affected is situated. It also appears that on August 11, 1899, the defendant *Mary T. Gunther* executed an instrument purporting to revoke the power of attorney granted to her husband, and on the following day she caused the same to be recorded in the office of the register of deeds for Waukesha county. Arthur W. Gunther was at no time personally notified that his wife had revoked the agency created by the power of attorney, nor was the plaintiff in any manner informed, before the mortgage in question was executed, that she had revoked or intended to revoke it. On November 14, 1900, the defendant Arthur W. Gunther, as attorney of *Mary T. Gunther,* and in his proper person, made and executed and delivered to the plaintiff a note and mortgage to secure the sum of $2,000 with interest, which mortgage covered the real estate of *Mary*

*T. Gunther* in Waukesha county, and was recorded in such county November 16, 1900. There was default in payment of interest and the principal under the terms of the note and mortgage and this action was commenced. The court awarded judgment to plaintiff for the amount due, with costs and solicitor's fees, and directed a sale of the premises covered by the mortgage in case the amount due on the judgment could not be paid as directed, and for personal judgment against *Mary T.* and Arthur W. Gunther in case of a deficiency after applying the amount realized on such sale. Other facts of record in the case are not material to the disposition of rights of the parties on this appeal and need not be stated. This is an appeal from the judgment.

For the appellant there were briefs by *Frame & Blackstone* and *Ritsher, Montgomery & Hart,* and oral argument by *H. J. Frame.*

For the respondent there were briefs by *F. W. Houghton* and *W. B. Neelen,* and oral argument by *Mr. Houghton.*

The following opinion was filed June 23, 1905:

SIEBECKER, J. The question presented is whether the recording of the instrument signed by *Mary T. Gunther,* purporting to revoke the power granted to her husband to convey her lands, operated to terminate this agency. The common law required that a revocation of such authority be brought to the personal notice of the agent. *Kelly v. Phelps,* 57 Wis. 425, 15 N. W. 385; *Walker v. Denison,* 86 Ill. 142. It is not claimed that, at the time he executed the mortgage here involved, Arthur W. Gunther had been actually notified that his authority under the letter of attorney had been revoked, nor is it claimed that plaintiff had actual notice that the defendant *Mary T. Gunther* had taken any steps to revoke it. It is urged that the statutes providing that letters of attorney and other instruments containing a power to convey lands as agents or attorneys for the owner may be recorded in the

office of the register of deeds of the county wherein the lands to which they relate are situated, and that the authority granted by such a letter or other instrument shall not be deemed revoked by any act of the party who executed it unless the instrument containing such revocation be also recorded in the same office, are an abrogation of the common-law rule, and that the recording of an instrument of revocation in itself effects a termination of the agency and serves as a notice to all persons.  This contention is, however, not justified by the terms of the recording statutes.  The extent to which the recording of instruments, under the statutes, shall be deemed notice thereof is specified by these enactments, and they contain no provisions declaring expressly or by implication that the recording of these instruments shall be deemed an abrogation of the common-law rule which requires the giving of notice to terminate the authority granted by them.  Sec. 2242, Stats. 1898, defining what the term "conveyance," as affecting title to land, shall be construed to embrace, clearly indicates that a letter of attorney and an instrument revoking the authority conferred thereby are not included within the terms used in this chapter, and they can therefore not be affected by the provisions of the statutes which declare the effect of recording conveyances of real estate, and which were enacted for the purpose of protecting subsequent purchasers in good faith and for a valuable consideration.  *Fallass v. Pierce,* 30 Wis. 443; *Gilbert v. Jess,* 31 Wis. 110; *Pringle v. Dunn,* 37 Wis. 449; *Girardin v. Lampe,* 58 Wis. 267, 16 N. W. 614; *Edwards v. McKernan,* 55 Mich. 520, 22 N. W. 20; *Bailey v. Galpin,* 40 Minn. 319, 41 N. W. 1054.

The context of secs. 2237, 2246, Stats. 1898, providing that letters of attorney and other instruments containing powers to convey lands may be recorded as therein prescribed, and when so recorded shall not be deemed revoked by any act of the party who executed them unless the instrument of revocation be also recorded in the same office, contains nothing to

the effect that such recording is necessary to give them validity, and it is not prescribed that the recording of the instrument of revocation shall take the place of the actual notice to the agent required at common law to terminate it. The case of *Arnold v. Stevenson*, 2 Nev. 234, is relied on as authority to the effect that the recording of the instrument of revocation operates, under the statute, as a notice to the agent and all persons dealing with him that the authority is terminated. The decision cannot serve as an authority for the construction of our statute, for the reason that the Nevada statute on the subject expressly provides that the recording of the instrument shall "import notice to all persons of the contents thereof," and, as above stated, our statute contains no such provision. It is manifest that, since the statute does not operate to give such notice, it is necessary to comply with all the requirements of the common law for revoking the authority granted by a letter of attorney or other instrument containing a power to convey land; but, when such instrument has been recorded, a common-law revocation shall be ineffectual unless the instrument of revocation shall also be recorded in the same office. Applying this rule to the facts of the case, we must hold that Arthur W. Gunther had power to execute the mortgage which plaintiff now seeks to foreclose, and that the judgment appealed from was properly awarded. No other question arises for consideration.

*By the Court.*—Judgment affirmed.

A motion for a rehearing was denied, and the following opinion filed October 3, 1905:

Cassoday, C. J. (*dissenting*). I disagreed with the decision of this case at the time it was made, but through some inadvertence I failed to state the fact at the time the decision was announced. On this motion I feel at liberty to briefly and respectfully state my views of the law applicable to the

undisputed facts of this case. The question presented is whether the mortgage made and recorded November 16, 1900, and here sought to be foreclosed, is valid and binding as a security, although never executed by the defendant, *Mary T. Gunther,* the sole owner of the land described in the mortgage, nor by any one else with her consent or knowledge. True, the mortgage purports to have been executed by Arthur W. Gunther, assuming to act for and in the name of *Mary T. Gunther,* under and by virtue of a power of attorney executed by her and recorded about two years prior to the making of the mortgage. But within a year after the execution of that power of attorney, and about fifteen months prior to the making of the mortgage, *Mary T. Gunther,* under her hand and seal, duly executed a written instrument in terms expressly revoking, countermanding, annulling, and making void that power of attorney; and the same was duly acknowledged, witnessed, and recorded August 12, 1899. The contention is, and, as I understand, the court held, that such revocation was ineffectual and void, for the reason that the fact of such revocation was not "brought to the personal notice of the agent." Two cases are cited in support of such contention. *Kelly v. Phelps,* 57 Wis. 425, 426, 15 N. W. 385; *Walker v. Denison,* 86 Ill. 142, 145. In the first of these cases the agent sued his principal for commissions on the sale of personal property by him, but which the principal refused to deliver. No such controversy is here presented. But the only object of such notice to the agent is to protect the agent. It is no protection to third persons dealing in good faith with the agent and without notice. 1 Am. & Eng. Ency. of Law (2d ed.) 1220. In the other case, a patentee, after having given a power of attorney to Walker and another to sell the letters patent in certain territory named, sold and assigned all his interest therein to other parties, "who were aware at the time of the existence of the power of attorney," and two months thereafter the attorney under such power sold and

conveyed the same interest in the patent to Denison, and took from him therefor a deed of the premises therein described; and the action was to set aside that deed, and the same was decreed by the trial court as prayed, and the judgment was affirmed by the supreme court, which held that the power was not coupled with an interest; "that the principal might revoke the power at any time, leaving the attorney to his action for breach of the covenant not to revoke;" that "when the principal. who has given a power of attorney to sell, himself sells and disposes of the thing before a sale by the agent, this will be a revocation of the power, by operation of law; . . . that as the sale of the territory by the agent was without right and authority, and the conveyance of the land was made without consideration, a court of equity would require the agent and his wife, to whom the deed was made, to reconvey the land to the grantor." That case seems to be in line with my contention. See Mechem, Agency, §§ 219, 220.

Obviously the power of attorney in question was not coupled with an interest, as indicated in the case last mentioned. The statute prescribes how all conveyances of lands within this state or any interest therein should be executed. Sec. 2216, Stats. 1898. *Mrs. Gunther* was expressly authorized by the statute to "convey her lands in this state or any interest therein" by her "separate deed." Sec. 2221, Stats. 1898. So the statute authorized her "by letter of attorney, executed and acknowledged in the manner" therein prescribed, to authorize her attorney to convey any interest in any of her real estate. Sec. 2223, Stats. 1898. So it authorized her alone to execute and acknowledge "every such conveyance and letter of attorney" of or relating to her real estate. Sec. 2224, Stats. 1898.

The important question is whether, prior to receiving the note and mortgage, the plaintiff had constructive notice that the power of attorney under which Arthur W. Gunther assumed to act in making them had in fact been revoked. The

statute provides that "a letter of attorney or other instrument containing a power to convey lands as agent or attorney for the owner thereof when executed, acknowledged and proved" as therein prescribed, may be "recorded." Sec. 2237, Stats. 1898. Another section of the Statutes provides that:

"No letter of attorney or other instrument containing a power to convey lands, when executed, acknowledged and re-corded as provided in this chapter, shall be deemed to be re-voked by any act of the party by whom it was executed unless the instrument containing such revocation be also recorded in the same office in which the instrument containing the power was recorded." Sec. 2246, Stats. 1898.

The obvious meaning of this section, to my mind, is that such power of attorney "shall be deemed to be revoked" in case "such revocation be also recorded in the same office in which" the power of attorney is recorded. But it is said that "a letter of attorney and an instrument revoking the authority conferred thereby are not included within the terms used in" ch. 100, Stats. 1898. The statute declares that:

"Every conveyance of real estate within this state . . . which shall not be recorded as provided by law shall be void as against any subsequent purchaser in good faith and for a val-uable consideration of the same real estate or any portion thereof whose conveyance shall first be duly recorded." Sec. 2241, Stats. 1898.

Another section declares that:

"The term 'conveyance,' as used in this chapter, shall be construed to embrace every instrument in writing by which any estate or interest in real estate is created, aliened, mort-gaged or assigned or by which the title to any real estate may be affected in law or equity, except wills and leases for a term not exceeding three years." Sec. 2242, Stats. 1898.

Certainly the power of attorney was an "instrument in writing by which" an "interest in real estate" was authorized to be "created, aliened, mortgaged or assigned, or by which the title to" *Mrs. Gunther's* real estate might "be affected in

law or equity." The several sections cited are all contained in the chapter entitled "Of Alienation by Deed, and the Proof and Recording of Instruments affecting Title to Land."

"Authority to execute a deed must be given by deed." 2 Jones, Real Prop. Conv. § 1021. A mortgage thus purporting to be executed by a stranger to the title is on its face a mere nullity. Had the mortgage in question been so executed by Arthur W. Gunther before the power of attorney had been revoked, still it would have been valid only by virtue of the power of attorney. The power of attorney, therefore, would have been an essential part of such conveyance by way of mortgage. The sole object of the power of attorney was to affect the title to land; and hence, as indicated, the Statutes fully provide for its being executed and recorded in the chapter "Affecting Title to Land." The same is true of the revocation of the power as appears from the statutes quoted.

The only object of recording such instruments is to notify persons subsequently dealing with the attorney or agent as to the extent of his power or want of power. Thus it was held in New York at an early day, under similar statutes to the sections here involved, that:

"A party dealing with an agent or attorney is bound to know the extent of his power, and is bound to inspect the instrument conferring it, especially where there is but one transaction between them. . . . If, however, a power to convey is recorded, an instrument of revocation also recorded in the same county appears to be sufficient notice." *Williams v. Birbeck,* 1 Hoff. Ch. 359.

To the same effect is the decision in *Arnold v. Stevenson,* 2 Nev. 234, 239, where that case is cited approvingly. True, the statute of Nevada is slightly different from ours in its wording; but in my judgment it is the same in substance. The text-writers seem to agree that the recording of such revocation pursuant to the requirement of a statute is constructive notice to all persons subsequently dealing with the attorney or agent. Thus it is said by Mr. Jones that:

"It is provided by statute in nearly all the states, though in somewhat varying terms, that a power of attorney to convey real estate must be executed, acknowledged, and recorded in the same manner that conveyances are. In several states a power of attorney to convey is not deemed to be revoked until the instrument of revocation is deposited for record in the same office in which the power is recorded." 2 Jones, Real Prop. Conv. § 1022, citing statutes in many states.

Another writer says:

"In some states the revocation of a power is required to be deposited for record in the proper office; and, where the revocation is recorded according to the statute, the authority is terminated although the agent has no actual notice." 1 Am. & Eng. Ency. of Law (2d ed.) 1221.

Referring to such statutes Mr. Mechem says:

"These statutes commonly provide also that any instrument revoking such a power shall or may be recorded in the same office, and make such recording in either case constructive notice of the facts which the record discloses. Where such statutes prevail, the recording of a revocation of the agent's authority is notice to all who may subsequently have occasion to deal with him; and, where the statute is imperative, the revocation cannot be given effect in any other way, unless by express notice." Mechem, Agency, § 229.

The rule seems to be universal that "the death of the principal terminates a power to convey, and a deed made by the attorney after such death is void even if he was ignorant of the fact of the death; though, if the power be coupled with an interest, it survives and may be executed after the death of the donor." 2 Jones, Real Prop. Conv. § 1037.