Argued November 14, affirmed December 21, 1951; petition for
rehearing denied January 23, 1952

## ANDREWS *v.* SPENCER, Executrix
### 238 P. 2d 729

*John D. Galey,* of Sweet Home, argued the cause for appellant. On the brief were Galey and Galey, of Sweet Home, and Kenneth G. Wilshire, of Lebanon.

*Randall S. Jones,* of Portland, argued the cause for respondent. With him on the brief were Jacob & Brown and Robert L. Weiss, of Portland.

Before BRAND, Chief Justice, and HAY, LATOURETTE, WARNER and TOOZE, Justices.

HAY, J.

This is an action for the reasonable value of labor and materials. The amended complaint alleges that, between November 16, 1946, and July 1, 1947, under employment by one C. B. Spencer, plaintiff installed certain electrical equipment in a building known as the Spencer Cannery, in Lebanon, Oregon; that his labor and materials were of the reasonable value of $1,710, which Spencer promised and agreed to pay, but did not; that Spencer died August 13, 1947, and that defendant is the executrix of his will. Defendant answered by general denial.

There was a trial by jury, during the progress of which, both parties having rested, defendant moved for a directed verdict in her favor. The court having been of the opinion that such motion should be granted, nevertheless, at the request of the adverse party, submitted the cause to the jury, with leave to defendant to move for judgment n. o. v. in the event of an adverse verdict. (§ 6-707, OCLA, as amended by ch 309, Oregon Laws 1941, and ch 149, Oregon Laws

1945.) The jury returned a verdict for plaintiff, and defendant in due course moved for judgment notwithstanding the verdict, or, in the alternative, for a new trial. The court granted the motion on the first ground. Judgment was given accordingly, and plaintiff appeals.

The evidence discloses the following facts: In 1935, the decedent, Mr. C. B. Spencer, became engaged in the cannery business at Lebanon, his cannery being housed in a building of which he was the owner. He continued in such business, and, in August, 1939, filed in the records of Linn County an assumed business name certificate, certifying that he was the only person interested in such business, and that the same was being conducted by him at Lebanon, Oregon, under the assumed business name of Spencer Packing Company. No certificate of withdrawal of such assumed business name was ever filed. On August 16, 1943, Mr. Spencer caused an Oregon corporation to be organized under the name of Spencer Packing Company of Lebanon. This corporation is referred to in the evidence as having been an operating company from 1943 to March 1, 1945, and plaintiff's brief herein states that it may be inferred that during that period it was the lessee of, or operated, the Spencer cannery. On February 2, 1945, Mr. Spencer and others caused to be organized a corporation under the name of Spencer Packing Company, and on March 1, 1945, Mr. Spencer leased his cannery to that corporation for a term of five years. The lease recited that the plant is "now owned and operated by the lessor as the Spencer Packing Company of Lebanon," and, among other matters, obligated the lessee to "employ the present executive and operating personnel of the Spencer Packing Company of Lebanon * * * at the salaries now being received." with the proviso that,

"If during the terms [sic] of this lease any of the employees should not devote their full time to their particular work, or fail to properly perform the duties of their particular position, they may be discharged at the discretion of the Board of Directors of Lessee, it being understood that this paragraph does not apply to C. B. Spencer." The formation of this corporation was publicized in Linn County, particularly in the Albany Democrat-Herald of February 17, 1945, the Lebanon Express of February 22, 1945, and the Albany, Lebanon, Sweet Home, and Linn County Directory of 1946.

Spencer Packing Company thereafter engaged extensively in the canning business. It installed new machinery in the Lebanon cannery, and built and equipped a cannery in Portland. Although Mr. Spencer was president of the corporation, he did not, subsequent to March 1, 1945, personally direct the operations of either the Lebanon or the Portland plant, each of which had a local manager. Apparently, in accordance with the provisions of the lease of the Lebanon plant, he was not taken over as an employee by the new corporation, as were the other employees of Spencer Packing Company of Lebanon.

Appellant was employed in Lebanon as an electrician from February, 1939, to August, 1945, at which time he went into business there for his own account as an electrical contractor, under the assumed name of Jim's Electric. The order for the labor and materials which are the basis of the present action was placed with plaintiff by one Louis Shores, an employee of the corporation, Spencer Packing Company. The order was placed in connection with the remodeling and enlarging of the Lebanon plant, and the installation of new machinery therein. In placing the order,

Mr. Shores was acting under the direction of the local manager of the Lebanon plant for Spencer Packing Company, and not under instructions or orders from Mr. Spencer. Mr. Spencer was not around the plant very much after March 1, 1945. Prior thereto he had actively managed the operation of the plant, and, among his other managerial duties, had given orders to Mr. Shores in relation to the latter's work. Besides the labor and materials for which the present action was brought, plaintiff had performed labor and furnished materials for the cannery between February 21, 1946, and October 30, 1946, having received payment therefor by checks bearing the signature, "Spencer Packing Company, Inc." When Mr. Spencer was doing business under the assumed business name of Spencer Packing Company, he had procured a considerable supply of blank bank checks, bearing the printed signature, "Spencer Packing Company By ——————." For reasons of economy, Spencer Packing Company of Lebanon used the same checks, with the addition of the name, "Spencer Packing Company of Lebanon", affixed by a rubber stamp below the signature "Spencer Packing Company". After the corporation, Spencer Packing Company, was organized, it used the same checks also, merely adding after the signature, "Spencer Packing Company", the abbreviation "Inc." imprinted by a rubber stamp.

There does not appear to be any evidence as to what Mr. Shores' duties were. He became an employee of C. B. Spencer when the latter first began business in Lebanon in 1935, and continued in the employ of his corporate successors seriatim. There is no evidence that Mr. Shores ever informed plaintiff that he was placing the order involved herein on behalf of Mr. Spencer, or that Mr. Spencer would pay plaintiff's bill

therefor. In this connection, plaintiff stated in a pretrial deposition as follows:

"Well, I had taken it for granted the superintendent or foreman whatever he might have been over there was responsible for the job and that the company he was working for would be reliable for the bill. I did the work at various times that was ordered by Mr. Shores and my accounts were always paid."

In 1947, Spencer Packing Company (the corporation) became involved in financial difficulties. A meeting was held on July 16, 1947, between representatives of the company and its unsecured creditors doing business in the Portland area. At that meeting, the company's representatives explained to the creditors the reason for the company's unfavorable financial condition, and submitted to them a financial statement as of June 30, 1947. They informed the creditors that, unless the company could obtain a moratorium or extension of time for payment of its unsecured creditors, it would be unable to continue in business. With a view to securing such a moratorium, the company thereupon executed and delivered to Portland Association of Credit Men, Inc., a promissory note, due one year after date, covering the total amount of its unsecured indebtedness, which note was accepted by the association for the benefit of the creditors. Portland Association of Credit Men then mailed a letter to each of the corporation's unsecured creditors, including plaintiff herein, explaining at some length the condition of the corporation's financial affairs, and enclosing, for signature by such creditors as were willing to accept the extension plan proposed by the corporation, a formal acceptance thereof. Under date of August 6, 1947, plaintiff, in his assumed business name of Jim's Electric and in his individual name as

well, executed a Verification and Letter of Attorney in favor of the Adjustment Bureau of Portland Association of Credit Men, authorizing such Bureau to represent him as agent and attorney in fact, in all matters relating to the collection of his claim against Spencer Packing Company, in the sum of $1,709.88, which is the claim sued for herein. Attached to such Verification and Letter of Attorney was a formal acceptance, signed by plaintiff, of "the benefits and obligations of the plan of extension outlined in letter of Portland Association of Credit Men, Inc., addressed to the creditors of Spencer Packing Company under date of July 18, 1947."

Plaintiff's only assignment of error on this appeal is that the court erred in entering judgment for defendant notwithstanding the verdict of the jury.

■ Plaintiff does not contend that Mr. Shores was in fact the agent of C. B. Spencer, but relies upon the principle of agency by estoppel, which, for the purposes of this case, may be stated thus:

"* * * stating the rule as one of estoppel, where a principal has, by his voluntary act, placed an agent in such a situation that a person of ordinary prudence conversant with business usages and the nature of the particular business is justified in assuming that such agent has authority to perform a particular act and deals with the agent upon that assumption, the principal is estopped as against such third person from denying the agent's authority; he will not be permitted to prove that the agent's authority was, in fact, less extensive than that with which he apparently was clothed. This rule is based upon the principle that where one of two innocent parties must suffer from the wrongful act of another, the loss should fall upon the one who, by his conduct, created the circumstances which enabled the third party to perpetrate the

wrong and cause the loss." 2 Am Jur, Agency, § 104.

See *Nicholas v. Title & Trust Co.*, 79 Or 226, 238, 154 P 391, Ann Cas 1917A 1149; *Leonard v. Howard*, 67 Or 203, 213, 135 P 549.

The applicability of the principle depends upon the principal's having, by words or conduct reasonably interpreted, caused an innocent third party to believe that the principal consents to have a particular act done in the principal's behalf by a person purporting to act for him. 1 Restatement, Agency, § 27.

> "* * * However, all the elements of an estoppel must be present. There must be conduct calculated to mislead, it must be under circumstances which justify the claim that the alleged principal should have expected it to be relied and acted on, and further, it must have been acted upon in good faith to the injury of an innocent party. * * *" 2 CJS, Agency, § 29b.

■ It seems to us that there was an absence of evidence in the case of conduct on the part of Mr. Spencer calculated to mislead plaintiff. It is true that Mr. Shores had been an employee of Mr. Spencer's from the time when the latter went into the cannery business in Lebanon, but there is no evidence that he had ever ordered services or materials from plaintiff for Mr. Spencer. There was, moreover, no evidence that Spencer Packing Company of Lebanon, the corporation which Mr. Spencer caused to be organized to take over his cannery business, was clandestinely conceived or operated. The same is true of Spencer Packing Company, the corporation last to be organized. On the contrary, the evidence shows that the formation of those corporations was advertised generally in Lebanon and throughout Linn County. None of plain-

tiff's statements of account were addressed to Mr. Spencer personally. All were addressed to Spencer Cannery.

There are in evidence six checks drawn on the First National Bank of Lebanon by Spencer Packing Company in favor of Jim's Electric, which bear, printed under the company's signature, the words ''Spencer Packing Company, Inc.'' The dates of these and the respective amounts follow:

| March 9, 1946 | $ | .75 |
|---|---|---|
| July 1, 1946 | | 1.50 |
| August 3, 1946 | | 6.60 |
| September 16, 1946 | | 258.80 |
| October 17, 1946 | | 330.04 |
| February 5, 1947 | | 1,278.50 |

■ These checks were given during a considerable portion of the period covered by the plaintiff's claim herein, and in themselves were some notice to plaintiff that he was employed by a corporation and not by Mr. Spencer. It is objected that there was no corporation bearing the corporate name ''Spencer Packing Company, Inc.'', but it must be conceded that the use of the abbreviation ''Inc.'' appended to a corporate name of which it is no part, is a commonplace American practice, and that, usually, or at least frequently, it imports simply that the company is incorporated. It is the equivalent of the phrase ''a corporation''. *Indian Refining Co., v. Royal Oil Co.,* 102 Cal App 710, 283 P 856, 857; *Goldberg, Bowen & Co. v. Dimick,* 169 Cal 187, 146 P 672; *Carver Sound Equipment Co. v. Tonahill,* Tex Civ App, 128 SW2d 860, 861.

As for the fact that the assumed business name adopted by Mr. Spencer in August, 1939, was never withdrawn by him upon the public records, that is immaterial, as there is no evidence that plaintiff ever

saw the certificate of such assumed business name, or had any knowledge of it, except constructive knowledge, or that he extended credit to Mr. Spencer upon his present claim on faith of the fact that the latter had done business under the assumed name of Spencer Packing Company.

It is true that, as testified by plaintiff, Mr. Spencer was personally present on a number of occasions during the time when plaintiff and his men were working at the cannery. Moreover, on one occasion, after plaintiff had entirely finished his work, he called Mr. Spencer on the telephone and asked him when he might expect payment, to which Mr. Spencer responded: "I will see that you get a check." But it is not contended that plaintiff extended credit because of Mr. Spencer's occasional presence in the cannery, and, of course, the fact that, after the work was done and the materials furnished, Mr. Spencer said that he would see that plaintiff received a check, laid no foundation whatever for the present action.

Several witnesses for plaintiff testified that it was common reputation in Lebanon and the surrounding territory, in the last half of 1946 and in the first half of 1947, that C. B. Spencer owned and operated the Spencer Cannery. There is no evidence, however, that plaintiff extended credit either to Spencer or to the corporation based upon such common reputation, or, in fact, that he was even aware of it.

It does not appear that the circumstances under which plaintiff accepted and performed the order transmitted to him by Mr. Shores were such as to justify his claim that Mr. Spencer should have expected that plaintiff would have relied upon and extended credit upon Mr. Spencer's supposed ownership of the cannery. As we have said, there is no evidence what-

ever that Mr. Shores had ever ordered any services or materials from plaintiff on behalf of Mr. Spencer. And there is no evidence that Mr. Spencer at any time knowingly caused or permitted Mr. Shores to act as his agent, either through real or apparent authority, subsequent to the time in 1943 when Mr. Spencer formed the Spencer Packing Company of Lebanon and leased the cannery to it.

In order to make good his claim of agency by estoppel, it was incumbent upon plaintiff to show not only that Mr. Spencer, by his acts or conduct, had knowingly caused or permitted Mr. Shores to appear to be authorized to act as his agent, but also that plaintiff himself, innocently and in good faith, acted to his injury in reliance upon such acts or conduct. The most that can be said for the evidence in this regard is that plaintiff assumed that Mr. Shores had authority to place the order, and assumed that "Spencer Cannery" would pay for it.

The last item of plaintiff's statement of account is dated July 1, 1947. The fact that Spencer Packing Company, the corporation, had become financially involved was made known to plaintiff, as stated above, by the letter of Portland Association of Credit Men dated July 18, 1947. Therein the company is referred to as a corporation "of which Mr. C. B. Spencer is the President." The letter stated further that "The Corporation owns and operates a plant located at Portland and also operates at Lebanon, Oregon, a plant leased from Mr. C. B. Spencer as an individual." Plaintiff did not, upon receipt of that letter, protest that Mr. C. B. Spencer and not the corporation was his debtor. On the contrary, with full notice of the circumstances, he gave the corporation, under date of August 6, 1947, an extension of one year for payment of his account.

Mr. Spencer died on August 13, 1947. Letters testamentary upon his estate were issued to defendant as executrix on August 19, 1947. Not until June 4, 1948, did plaintiff file his statement of account as a claim against the estate. We think that such filing was the product of an afterthought on his part.

In our opinion, the circuit court made the proper disposition of this cause. The judgment is affirmed.